Frost, J.
dissenting. The unanimity of the Court in reversing the judgment below, makes it necessary to vindicate the circuit opinion, by enlarging the grounds on which it is rested in the report. The case on the circuit was decided in submission to the authority of the cases cited. These decisions were the law, until they have been reversed by the judgment of the Court in this case. On their authority it was affirmed, that a bank presents three subjects for taxation: the bank in its corporate capacity, or the franchise to bank : the capital of the individual stockholders invested in the bank : and the dividends or income which the stockholders may derive from the funds so invested.
In McCulloch vs. The State of Maryland, (4 Wheat. 436,) the State of Maryland had imposed a tax on the branch of the United States Bank, in that State. It was decided that the bank, that is, the franchise to bank, was exempted, by the Constitution of the United States, from liability to taxation by the States. But Chief Justice Marshall, who delivered the opinion of the Court, says, “ this opinion does not deprive the States of any *572 resources which they originally possessed. It does not extend to a tax imposed on the interest which the citizens of Maryland may hold in this institution, in common with other property of the same description throughout the State.” This distinction is recognized by Judge Harper, in the case of Berney vs. The City Council of Charleston. In Bulow & Potter vs. The City Council of Charleston, (1 N. & McC. 528,) the City Council had imposed a tax on United States Bank stock: and the question was, whether the stock was not protected from taxation, under the constitutional power of Congress to establish the bank. In the judgment of the Court, delivered by Johnson, J., he says, “ it will not be denied that the exercise of the right of taxation over the corporation, as a bank, would be incompatible with the constitutional power of Congress to establish a National Bank.” But it is affirmed, that “ it does not therefore follow, because the bank itself is exempted from taxation, that the interest of an individual stockholder should also be exempted.” In the case of the City Council of Charleston ads. Weston, (Harp. 343,) Judge Richardson, delivering the opinion of the Court, says, “ the distinction is manifest between a tax on the institution itself (the United States Bank) and a tax on the interest of an individual stockholder. The bank itself cannot be taxed: but to tax the portion of the stock which belongs to an individual is not to tax the institution.”
The Bank of the United States was constituted in the same manner as the “State” and “South Carolina” banks. The charter of each conferred the franchise to bank. The capital of each was, in the same manner, contributed by individuals, who were stockholders in proportion to the amounts they contributed. The distinction between the Bank of the United States, as a corporation, and the stock or interest of individuals in its capital as subjects of taxation, was not dependent on any thing in the constitution of that bank different from other banks : nor can the liability to taxation of the interest or stock of individuals in that bank, while the bank itself was exempted, be attributed *573 to the circumstance that the bank itself was exempted under the Constitution of the United States.
In the cases cited, it was held, that the Act of Congress, chartering the bank, was constitutional and obligatory on the States. The question was, what exemption might be claimed under the Act ? It was admitted, that the bank itself was exempted : but it was adjudged that while the bank was exempted, that did not exempt the interest or stock held by individuals in its capital. If the stock of individuals in the bank was not exempted, it is manifest that the dividends or income of the stockholders could not be. This case of Sebring vs. The City Council, is entirely ’ analagous to the cases cited. The Acts of the Legislature, incorporating the “State ” and “South Carolina” banks, are obligatory on the City Council, as the Act of Congress, chartering the Bank of the United States, was obligatory on the States.. The exemption which the Bank of the United States might claim under its charter, the States were bound to grant. The exemption which the State and South Carolina banks may claim under their charters, the City Council is bound to grant. By the charter of the South Carolina bank, the “ bank ” is relieved from the payment of all taxes. If the exemption of the corporation, or Bank of the United States did not exempt the interest of its stockholders in the capital from taxation, neither can the exemption of the Bank of South Carolina exempt its stockholders. Between the cases cited and the present case, no possible distinction can be suggested, except that the Bank of the United States derived its privilege from an Act of Congress and claimed it against the State : and the Bank of South Carolina derives its privilege from an Act of the Legislature and claims it against the City Council of Charleston.
The case of the State Bank is somewhat different. By its charter, “ the said corporation and the stock thereof is relieved from the payment of all taxes.” In reference to this case, and also in submission to the adjudged cases, cited in the report, it was held by the circuit Judge, that the dividends or income of the stockholders in a bank, presented a third subject of taxation, *574 distinguishable from the “ bank itself.” and from the interest or slock of individuals in. its capital.
This was affirmed on the authority of Berney vs. The City Council of Charleston, (2 Bail. 654), This case was argued with great learning and ability and by eminent counsel. It was considered with the attention due to a case of great moment. The three Judges who then composed the Court of Appeals, delivered their opinions severally. It brought into question the constitutionality of a tax imposed by the State on the dividends of the United States Bank stock, owned by the citizens of the State. The tax was unanimously adjudged to be constitutional.
Judge Harper says, “with respect to authority, it might be enough to say, that in the cases relied on, (McCulloch’s, and The City Council vs. Weston,) the case now before us is expressly excepted by the opinion of the Courtand he cites the passage from Judge Marshall’s opinion, which has been extracted.
In the opinion of Judge O’Neall, the distinction between a tax on stock and on dividends, is emphatically affirmed. He says, “ an Act for the legitimate purpose of revenue, might, I think, be constitutional, even if it were imposed directly on the stock, owned by the citizens of the State, in the U. S. Bank. But the Act does not impose a tax on the stock, but on the dividends : which are paid over to the citizen, and which become his private and separate property, and are not, at all, connected with the United States Bank, except that they are derived from it. As well might a citizen contend that a slave, purchased by him in Virginia with the dividends on his stock, and brought into this State, was not liable to taxation. The absurdity of such a proposition is too obvious to require more than to be stated. To me, it appears equally absurd to contend that income, derived from an institution, not taxable, after it has been separated from it, and is in the pocket of a citizen, amenable to all the taxing power of the State, is still not liable to taxation. It is no longer United States Bank stock: it is no longer necessary to the operations of the bank: it is private property.” In the progress of the argument, the Judge says, “ it must be kept *575 in mind, throughout the discussion, that the tax imposed by the Act of the Legislature, is not on the bank: nor on the stock: but on a citizen’s income derived from it.” The case is distinguished from that of Weston vs. The City Council, on the ground that “ a tax on Government stock, eo nomine, (which was Weston’s case.) may he unconstitutional; and yet the tax on the profits, received by a citizen from it, be constitutional.” At the conclusion of his opinion, referring to the case of McCulloch vs. The State of Maryland, the Judge says, “ to me it appears that the conclusion of this great Judge and constitutional lawyer would warrant a tax on the stock, held by a citizen in the United States Bank. Let that, however, be as it may, I am satisfied, both on general principles and on the authority of the case of McCulloch vs. The State of Maryland, that the Act imposing a tax on dividends, arising from stock, owned by a citizen of this State, “ in all banks not chartered by the State, (meaning the United States Bank) is constitutional.”
Judge Johnson cites and approves McCulloch vs. The State of Maryland. He states the claim of the relators, as “ founded on the circumstance that they are the owners of stock in the Bank of the United States: and that by a bonus paid to the United States for the privilege of banking; they have purchased an exemption from State taxes.” That is precisely the ground taken by the relators in this case. They claim that having paid a bonus to the State for the privilege of banking: and in the case of the State Bank having been, by the Act of the Legislature, as to the “ corporation and stock thereof,” "relieved from the payment of all taxes :” and in the case of the South Carolina Bank, it having, in like manner, as to the “ Bank,” been “ relieved from the payment of all taxes,” the stockholders are exempted from the payment of city tax on their shares in the Bank and the dividends received from them. The answer of Judge Johnson to the claim of the stockholders of the United States Bank to be exempted from State taxation, applies equally to the claim of the relators to be exempted from city taxation.
*576 At the conclusion of his argument he says — “ I am persuaded that the difficulties about this question have originated in confounding the person of the citizen with the property which he owns. It is the citizen, and not the property, which pays the tax. The property is referred to only as furnishing a rule, by which the amount which the citizen ought to pay, is ascertained. His personal liability is measured by the quantity of land he owns, by his receipts of interest on money loaned, by his professional income or stock in trade: — and where, may I ask, is -there any rational distinction between a tax imposed in respect of these sources of wealth and income, and wealth derived from Bank and Government stock.” In the case of the City Council of Charleston ads. Weston, Judge Richardson says, (delivering the opinion of the Court,) “ the interest paid' annually to the stockholders, when received by them, has no longer any connection with the Bank, but then becomes money, belonging to the individual in severalty, and is liable to be taxed, like any other piece of property, belonging to him.”
These cases, on which the judgment of the circuit Court was rested, and which are cited in the report, clearly recognize and affirm a distinction, as subjects of taxation between the Bank itself, and the interest or shares of individuals in the capital: and the dividends or income of the shares: so that while the bank, itself, is exempted from taxation, the shares of individuals in the capital may not be: and while both the bank and the shares of individuals in its stock are exempted, that does not exempt the dividends or income of the stockholder. Even then if it be admitted that the “ Bank” of South Carolina is exempted, by its charter, from taxation by the City Council, that will not exempt the shares in its capital which may be held by inhabitants of the City, nór the dividends and income thereof, from taxation by the City Council. And if, in the case of the State Bank, “ the corporation and its stock” are, by its charter) exempted from taxation, that does not exempt the income or dividends, received from the profits of their shares of the capital, *577 by stockholders, who are inhabitants of Charleston, from liability to pay a city tax.
Thus far the judgment of the Circuit Court has been supported by the authority of the cases adjudged, which constitute the law, until they are reversed. I will briefly add some considerations to shew, that, independently of those decisions, the income from stock in the South Carolina and State Banks which may be owned by an inhabitant of Charleston, is subject to taxation by the City Council.
Income or profits constitute the most proper subject of taxation : it is more just and equal than any other. If honestly paid, it would apportion the expense of government among the citizens in proportion to their ability to contribute. Adam Smith, in his Wealth of Nations, Book 5, c. 2, says, “ the subjects of every State ought to contribute to the support of the government, in proportion to their respective abilities: that is, in proportion to the revenue which they respectively enjoy under the protection of the State. The expense of government is like the expense of management to the joint tenants of a great estate: who are all obliged to contribute in proportion to their respective interests in the estate. In the observation or neglect of this maxim consists what is called the inequality of taxation.”— Great inequality of taxation must exist under the wisest system of impost. It is highly impolitic to increase the inequality, by the grant of exemption to particular species of property. Every presumption should be made against such a grant. More than eight millions of dollars are invested in the private banks in the City of Charleston. This capital constitutes a large item in the amount of corporate taxable property: and is principally owned by inhabitants of the city. These, by the exemption adjudged to them, enjoy the security and advantages of the city, without contributing, in rateable proportion, to the expenses of its government and police. If the fortune and circumstances of an individual permit, he may invest his whole property in bank stocks, and thus contribute nothing to the expenses of the city government, however large may be the revenue which he enjoys *578 under its protection. The exemption throws the contribution which the holders of bank stock should make, on other subjects of taxation, to the injury and oppression of the owners. The answer which the holders of bank stock make to this imputation, is, that in the bonus which they paid for their charter, they have paid, in advance, the taxes on their stock, during the continuance of the charter.
This leads to a construction of the charters of these banks. By the charter of the State Bank, its “ corporation and stock are relieved from the payment of all taxes during the time for which it is incorporated.” In consideration of the payment of $20,000, the “Bank” of South Carolina, is, in like manner, “relieved from the payment of all taxes.” There can be no doubt that the Legislature might exempt the holders of stock, resident in the city, from liability to taxation, on account of their stock, by the City Council. But the question is, has the Legislature done so ? It has been argued that the payment of the bonus was a payment of taxes in advance. It certainly was not the city tax which the relators paid into the State treasury, when they paid the bonus. As it was paid to the State, the obvious conclusion is, that it was for the State taxes. This conclusion is not weakened by the terms of the charter, that the banks shall be “relieved from all taxes.” The most plain construction is, that it was intended the bank should be relieved from the payment of “ all taxes,” in the place of which the bonus was paid. If the exemption be claimed by purchase, the privilege purchased must be limited by the consideration paid. When that was paid to the State, it is reasonable to infer that the exemption was granted from liability to taxation by the State. The claim or obligation which the payment of a consideration and the terms of a contract may create, are, in the execution of contracts, limited to the party who received the consideration or who was bound by the contract. The privilege then claimed by the payment of the bonus, should not be extended to exemption from the payment of corporate taxes to the city of Charleston.
*579 'Whether the bonus was paid to the State for all taxes, in advance, on the capital of these banks: or for the purchase of the franchise to bank, and also of relief from the payment of all taxes, the payment must exempt the banks from liability to the payment of all taxes to the State. The State cannot tax the capital twice: or is bound, by its contract, not to demand the payment of any taxes. But the City Council is not restrained by either of those considerations from taxing the inhabitants of the city for the dividends or income of the stock they may own. This is the obvious and conclusive answer to that view of this case by which it is maintained that, because the State can not tax, the city can not: and that the right of the city to tax is negatived by the fact that the State has never taxed.
By the charter of the city, prior to the incorporation of these banks, the Legislature had granted to the City Council of Charleston, “full power and authority to make such assessments on the inhabitants of Charleston, for the safety, convenience, benefit and advantage of the said city, as shall appear to them expedient.”
A legislative grant should not be so construed as to divert or derogate from a previous grant. Such a construction should be made only in compliance with express terms of revocation, or by necessary intendment. Neither, by the terms of the charter, which does not mention the City Council of Charleston; nor, by any reasonable intendment, can the exemption claimed be extended beyond a liability to taxes payable to the State.
The taxing power of the City Council is granted in the am plest terms. It is not restricted, in its exercise over the inhabitants of the city, to any taxable property which they may own. The taxes are levied by an “ assessment on the inhabitants,” without any qualification or restriction of the subjects, in respect of which the assessment may be made. An inhabitant may be assessed for any thing and every thing. He may be assessed for a dog as well as for land: he may be assessed for his capabilities and industry by a tax on the income he may receive *580 from the “ pursuit of any faculty, profession or employment.” If he has nothing else, he may be liable to a Poll tax. The power of “ assessment” by the City Council has no other limit than such “as shall appear to them expedient.” The inhabitants of the city are made subject to such assessment for the “ safety, convenience, benefit and advantage,” which a residence in the city affords to them. Non-residents under the charter are' liable to be assessed only “ on the taxable property which they may hold in the city.” A tax on the dividends of Bank stock, received by an inhabitant of Charleston is, in effect, an assessment on him for his income from that investment. The cases cited shew that when the dividends of Bank stock are paid to the stockholder, the money received loses its identity, as dividends or profits from the bank shares, and can not be distinguished from profits or income, derived from any other source : and in the character of revenue, enjoyed under the government of the State or City, is chargable with contribution for the expenses of the Government. It was admitted in the argument, by the _ counsel for the relators, that they might be assessed on their dividends, under a general income tax. But it was contended that a tax on the income derived from bank stock, when the income derived from other sources of profit are not taxed, is unequal, and, therefore, illegal. But such a tax is no more unequal than a tax on certain kinds of property, while other kinds are not taxed. It may be assumed that a tax is levied on every kind of property in the city which yields a profit. When the subject from which the profits are derived cannot be specifically taxed, the only mode of enforcing a contribution of such profits, is by a tax on the profits themselves or the income they afford. Thus, the profits made in the pursuit of any “faculty, profession or employment,” have long been assessed, both by the City and the State. Yet it has never been supposed that such a tax was unequal, and, therefore, illegal, because the income from many other sources of profit, was not also taxed. Adam Smith says, that every citizen is bound to contribute to the expenses. in proportion to the revenue which he enjoys under the *581 Government. It is in the neglect of this maxim, he says, that the inequality of taxation consists. The tax on the income from Bank stock was designated by the Council to enforce an equal and just contribution to the expenses of the city government and police. The effect of the judgment of the Court on the construction of the charters of the State and South Carolina Banks is, to sanction and perpetuate what Adam Smith treats as unequal and vicious taxation: when every citizen does not contribute to the support of Government in proportion to the revenue he enjoys under it.
It is to be observed that the question of the exemption of the relators has been considered as if they were inhabitants of the city. Nothing to the contrary appears in the suggestion, nor has been suggested in the argument of the case.
Johnston, Ch. absent at the argument.

Motion granted.